Electronically Filed
Erica L. Woodford, Clerk
Bibb County Superior Court
Docket Date: 7/10/2020 4:41 PM

Maggie Hernandez

## IN THE SUPERIOR COURT OF BIBB COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| SANDRA MIDDLEBROOKS, | § § § | Civil Action File No: **2020-CV-072543** |
| Plaintiff, | § § | |
| vs. | § § | |
| MACON OPERATING, LLC d/b/a | § | DEMAND FOR JURY TRIAL |
| FOUNTAIN BLUE REHAB AND | § | |
| AND NURSING; MACON HOLDINGS | § | |
| GROUP, LLC, MENDEL BRECHER, | § | |
| PINNY ZWEIG, SARA LICHTMAN, | § | |
| LIBBY BRECHER, JACOB | § | |
| ZIMMERMAN, CHANA LICHTMAN, | § | COMPLAINT FOR DAMAGES |
| and ANSHEL NIEDERMAN, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Sandra Middlebrooks as a surviving daughter of Arthur Lewis Smith, deceased, files this Complaint for Damages against Defendants Macon Operating, LLC d/b/a Fountain Blue Rehab and Nursing; Macon Holdings Group, LLC; Mendel Brecher; Pinny Zweig; Sara Lichtman; Libby Brecher; Jacob Zimmerman; Chana Lichtman; and Anshel Niederman as follows:

### PARTIES, JURISDICTION AND VENUE

#### *Plaintiff*

1.  Plaintiff Sandra Middlebrooks ("Ms. Middlebrooks") is a surviving daughter of Arthur Lewis Smith, deceased ("Mr. Smith"). Mr. Smith was not married at the time of his

MH

death.  Plaintiff is authorized to bring this action in tort for the wrongful death of her father.  OCGA § 51-4-2.

### *Defendants*

2.    Upon information and belief, Defendant Macon Operating, LLC d/b/a Fountain Blue Nursing and Rehab ("Fountain Blue") was at all material times a Georgia for-profit limited liability company authorized to do business in the State of Georgia and doing business in Bibb County.  Macon Operating, LLC may be served through its registered agent, VCorp Agent Services, Inc., 289 S Culver Street, Lawrenceville, GA 30046.

3.    Upon information and belief, Defendant Macon Holdings Group, LLC was at all material times a foreign limited liability company doing business in the State of Georgia. Macon Holdings Group, LLC committed tortious injuries in this state, regularly does and solicits business in this state, and derives substantial revenue from services rendered in this state.  As such, Macon Holdings Group, LLC is subject to the jurisdiction of this Court pursuant to OCGA § 9-10-91 and may be served through its registered agent, VCorp Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805.

4.    Upon information and belief, Defendant Mendel Brecher, at all material times, was and remains the acting manager of Macon Holdings Group, LLC and Macon Operating, LLC,  Defendant Mendel Brecher is an officer of both companies, and established, acquired, owned, maintained, controlled and/or operated Defendant Facility Fountain Blue Nursing and Rehab.  Upon information and belief, Defendant Brecher is a New York Resident but is subject to the jurisdiction of this Court through Georgia's long-

arm statute due to his regular business in the state of Georgia, from which he derives business income from the operations of Fountain Blue, and the tortious acts and injuries committed in the State of Georgia. OCGA § 9-10-91. Defendant Mendel Brecher may be served at 5308 13th Avenue #273, Brooklyn, NY 11219.

5.    Upon information and belief, Defendant Libby Brecher held at all material times an equity interest in Macon Holdings Group, LLC, which wholly owns Macon Operating, LLC. Through her interest in Macon Operating, LLC, Defendant Libby Brecher was at all material times a controlling person of the residential health care facility, Fountain Blue Nursing and Rehab and, with other equity interest holders, established, acquired, owned, maintained, controlled and/or operated Defendant Facility Fountain Blue Nursing and Rehab. Upon information and belief, Defendant Libby Brecher is a New York Resident but is subject to the jurisdiction of this Court through Georgia's long-arm statute due to her regular business in the state of Georgia, from which she derives business income from the operations of Fountain Blue and tortious acts and injuries committed in the State of Georgia. OCGA § 9-10-91. Defendant Libby Brecher may be served at 1440 59th Street, Brooklyn, NY 11219.

6.    Upon information and belief, Defendant Jacob Zimmerman held at all material times an equity interest in Macon Holdings Group, LLC, which wholly owns Macon Operating, LLC. Through his interest in Macon Operating, LLC, Defendant Jacob Zimmerman was at all material times a controlling person of the residential health care facility, Fountain Blue Nursing and Rehab and, with other equity interest holders, established, acquired, owned, maintained, controlled and/or operated Defendant

Facility Fountain Blue Nursing and Rehab. Upon information and belief, Defendant Jacob Zimmerman is a New York Resident but is subject to the jurisdiction of this Court through Georgia's long-arm statute due to his regular business in the state of Georgia from which he derives business income from the operations of Fountain Blue and tortious acts and injuries committed in the State of Georgia. OCGA § 9-10-91. Defendant Jacob Zimmerman may be served at 1145 59th Street, Brooklyn, NY 11219.

7.    Upon information and belief, Defendant Chana Lichtman held at all material times an equity interest in Macon Holdings Group, LLC, which wholly owns Macon Operating, LLC. Through her interest in Macon Operating, LLC, Defendant Chana Lichtman was at all material times a controlling person of the residential health care facility, Fountain Blue Nursing and Rehab and, with other equity interest holders, established, acquired, owned, maintained, controlled and/or operated Defendant Facility Fountain Blue Nursing and Rehab. Upon information and belief, Defendant Chana Lichtman is a New York Resident but is subject to the jurisdiction of this Court through Georgia's long-arm statute due to her regular business in the state of Georgia from which she derives business income from the operations of Fountain Blue and tortious acts and injuries committed in the State of Georgia. OCGA § 9-10-91. Defendant Chana Lichtman may be served at 1334 58th Street, Brooklyn, NY 11219.

8.    Upon information and belief, Defendant Anshel Niederman held at all material times an equity interest in Macon Holdings Group, LLC, which wholly owns Macon Operating, LLC. Through his interest in Macon Operating, LLC, Defendant Anshel Niederman was at all material times a controlling person of the residential health care

facility, Fountain Blue Nursing and Rehab and, with other equity interest holders, established, acquired, owned, maintained, controlled and/or operated Defendant Facility Fountain Blue Nursing and Rehab.  Upon information and belief, Defendant Anshel Niederman is a New York Resident but is subject to the jurisdiction of this Court through Georgia's long-arm statute due to his regular business in the state of Georgia from which he derives business income from the operations of Fountain Blue and tortious acts and injuries committed in the State of Georgia.  OCGA § 9-10-91. Defendant Anshel Niederman may be served at 2146 60th Street, Brooklyn, NY 11204.

9.      Upon information and belief, Defendant Sara Lichtman held at all material times an equity interest in Macon Holdings Group, LLC, which wholly owns Macon Operating, LLC.  Through her interest in Macon Operating, LLC, Defendant Sara Lichtman was at all material times a controlling person of the residential health care facility, Fountain Blue Nursing and Rehab and, with other equity interest holders, established, acquired, owned, maintained, controlled and/or operated Defendant Facility Fountain Blue Nursing and Rehab.  Upon information and belief, Defendant Sara Lichtman is a New York Resident but is subject to the jurisdiction of this Court through Georgia's long-arm statute due to her regular business in the state of Georgia from which she derives business income from the operations of Fountain Blue and tortious acts and injuries committed in the State of Georgia.  OCGA § 9-10-91.  Defendant Sara Lichtman may be served at 3478 Walsh Court, Brooklyn, NY 11230.

10.     Upon information and belief, Defendant Pinny Zweig holds an equity interest in Macon Holdings Group, LLC, which wholly owns Macon Operating, LLC.  Through her

interest in Macon Operating, LLC, Defendant Pinny Zweig is a controlling person of the residential health care facility, Fountain Blue Nursing and Rehab and, with other equity interest holders, established, acquired, owned, maintained, controlled and/or operated Defendant Facility Fountain Blue Nursing and Rehab. Upon information and belief, Defendant Pinny Zweig is a New York Resident but is subject to the jurisdiction of this Court through Georgia's long-arm statute due to her regular business in the state of Georgia from which she derives business income from the operations of Fountain Blue and tortious acts and injuries committed in the State of Georgia. OCGA § 9-10-91. Defendant Pinny Zweig may be served at 5308 13th Avenue #273, Brooklyn, NY 11219.

11.    Whenever the term "Defendants" is used in this Complaint, this term collectively refers to and includes Defendants Macon Operating, LLC, Macon Holdings Group, LLC, Mendel Brecher, Pinny Zweig, Sara Lichtman, Chana Lichtman, Libby Brecher, Jacob Zimmerman, and Anshel Niederman, unless specifically restricted within a cause of action or as further defined below.

12.    At all material times, the Defendants remained actively engaged in and transacted business in Bibb County, Georgia, by establishing, acquiring, owning, maintaining, and/or operating Fountain Blue, a skilled nursing facility located at 3051 Whiteside Road, Macon, Georgia 31216 (the "Facility" or "Nursing Home").

13.    At all material times, Defendants established, owned, operated, managed, and controlled the Facility pursuant to a permit issued to Macon Operating, LLC by the State of Georgia Department of Community Health. Defendants, therefore, were

responsible for ensuring that the activities and operations of the Facility complied with all applicable laws and regulations, including but not limited to the Rules and Regulations adopted by the State of Georgia's Department of Community Health pertaining to nursing homes. (GA. COMP. R. & REGS. r 111-8-56 *et seq.*).

14. At all material times hereto, Defendants charged and were paid for services rendered to Mr. Smith.

15. Additionally, at all material times, the Facility was a participant in the Medicare and Medicaid programs and was, therefore, required to comply with the provisions of 42 CFR § 483.1 *et seq.*

16. Defendants are directly liable by virtue of their own conduct for the wrongful acts detailed herein. Defendants are also vicariously or indirectly liable for the negligent acts and omissions of all persons or entities under their control, either direct or indirect, including employees, agents, and consultants and responsible for the wrongful conduct detailed herein under one or more of the following alternative legal theories:

   a. *Alter Ego*: At all material times, Defendants were *alter egos* of one another. Defendants conducted these entities, including Fountain Blue, as if they were one by commingling them on an interchangeable basis or confusing separate properties, records, or control. Furthermore, Fountain Blue was a subsidiary, affiliate, and/or alter ego of Defendants. Fountain Blue was merely a conduit through which the Defendants did business. The management and operations of Fountain Blue were so assimilated within the Defendants that Fountain Blue was simply a name through which the Defendants conducted their business. The

Defendants so dominated and controlled the operations of Fountain Blue, and any assertions by the Defendants that each was a separate corporate fiction with an independent and separate existence is a sham and part of a scheme to perpetrate fraud, promote injustice, and evade existing legal and fiduciary obligations.

b. *Agency*: At all material times, Defendants acted as agents for one another and each ratified or authorized the acts or omissions of the other.

c. *Joint Venture/Enterprise*: In the alternative, Defendants are each liable for the acts and omissions of the other because they were engaged in a joint venture and enterprise and acted in concert in the establishment, operation, management, and control of the facility. Defendants shared a common purpose in establishing, operating, managing, and/or controlling Fountain Blue and combined their property and labor in Fountain Blue for the purpose of making a profit. Defendants each had a right of mutual control over the establishment, operation, management, control, supervision and maintenance of Fountain Blue.

17. All Defendants also acted jointly and in concert to cause one indivisible injury, and their negligence cannot be apportioned. Therefore, Defendants are joint tortfeasors making them jointly and severally liable.

18. Defendants are directly liable by virtue of their own conduct for the wrongful acts detailed.

19. Whenever in this Complaint it is alleged that Defendants did any act or failed to do any act, it is meant that the officers, agents, or employees of the designated Defendants

respectively performed, participated in, or failed to perform such acts while in the course and scope of their employment or agency relationship with the Defendants.

20.    The acts and omissions forming the basis of this Complaint arose in Bibb County, Georgia, and Defendants are subject to the jurisdiction of this Honorable Court.  Ga. Const. 1983, Art. VI, Sec. IV, ¶ 1; O.C.G.A. § 15-7-4.

21.    Defendants are joint tort-feasors.  Venue is proper for all Defendants in Bibb County, Georgia. Ga. Const. 1983, Art. VI, Sec. II, ¶ 6; O.C.G.A. §§ 14-2-510, 14-3-510.

## FACTS

22.    ARTHUR LEWIS SMITH was 74 years old when he was admitted to Fountain Blue Nursing and Rehab on June 6, 2017. At the time of his placement, Mr. Smith's principal diagnosis was vascular dementia with behavioral disturbance.  He also suffered from several anxiety and depressive disorders and seizures.

23.    Additionally, at the time of his placement, Mr. Smith had begun wandering from his home with his daughter, which triggered his initial placement.

24.    In addition to being an elopement risk, Mr. Smith was also a fall risk and at risk for malnutrition.

25.    On September 19, 2017, Mr. Smith fell outside of the nursing home.  At that time, against the very minimum standard of care, nursing home staff failed to complete a fall assessment and post-fall documentation and to notify Mr. Smith's family and doctors.

26.    On November 6, 2017, Mr. Smith attempted to move around outside the building by himself and managed to get outside of the facility by himself. Facility staff determined that he was no longer able to ambulate by himself at that time.

27. On January 14, 2018, Mr. Smith fell again. Again, facility staff failed to complete a fall assessment and post-fall documentation.

28. On June 7, 2018, Mr. Smith fell again.  This time, he wandered outside by himself through the back door to the administrator's office and was found on the ground outside.

29. After he was found, Mr. Smith was placed back in his bed, and nursing home staff completely failed to seek any immediate medical treatment for Mr. Smith.  Mr. Smith went from being ambulatory and walking around on his own to being completely bed bound after that time. Still, for almost one week, nothing was done, and no physician was notified.

30. After Mr. Smith's fall, the nursing home staff failed to consistently take his vitals signs and ensure Mr. Smith was not suffering medical issues from that fall.

31. For six days, Mr. Smith suffered from severe pain from that fall and finally, on June 13, 2018, the nursing home staff requested that x-rays be ordered for Mr. Smith.  He was sent to the emergency room on June 14, 2018, seven days after his fall.

32. At the hospital, Mr. Smith was diagnosed with rib fractures and a T11 burst fracture in 3 places.  He received absolutely no treatment for these fractures before  June 14, 2018.

33. Nursing home staff also failed to do any wandering assessments until June 13, 2018, despite Mr. Smith's wandering outside of the nursing home twice, once on November 6, 2017 and again on June 13, 2018.

34. Nursing home staff also failed to pay attention to the numerous pharmacy alerts for the severe drug interactions of Mr. Smith's medications, many which caused issues with the heart.

35.    Nursing home staff failed to have Mr. Smith's prescribed medications on many occasions as well.

36.    Further, Mr. Smith's nutrition needs were not met by the nursing home staff. In his last month of life, Mr. Smith lost fifteen pounds. Throughout his residency, he was often under-nourished and received no interventions for his weight loss and nutrition needs.

37.    When admitted to the hospital on June 14, 2018, Mr. Smith suffered from volume depletion, acute renal failure and malnutrition. He never returned to the nursing home.

38.    On July 13, 2018, Arthur Smith died from injuries suffered at Fountain Blue.

## COUNT I
## PROFESSIONAL NEGLIGENCE

39.    Plaintiff incorporates the above paragraphs as though set forth fully verbatim.

40.    By its acceptance of Arthur Lewis Smith as a resident at their nursing home facility, Defendants owed him a duty to furnish him with that degree of care, skill, and diligence required of the nursing home profession in general under similar conditions and like surrounding circumstances.

41.    Defendants were negligent and failed to exercise that degree of care required of the long-term care and skilled nursing home profession in general under similar conditions and like circumstances. To the extent that this Count may be considered a medical malpractice action as defined in OCGA § 9-11-8 or OCGA § 9-3-70, see the Affidavit of Barbara Barnette, RN, MSN, CLNC, attached hereto as Exhibit "A" pursuant to OCGA § 9-11-9.1(a), to the extent that this statute may apply, if at all, to this action, and which Affidavit is hereby incorporated herein by reference. The Affidavit specifies

at least one negligent act or omission on the part of Defendants and/or its staff, and the factual basis for such negligent act or omission that caused injury to Arthur Lewis Smith The Affidavit is not inclusive of each act, error, or omission that has been committed by Defendants, and Plaintiff reserves the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflects a departure from the requisite standard of care required by law.

42.    Notwithstanding the duty owed to Arthur Lewis Smith by Defendants as described above, Defendants were negligent and failed to exercise that degree of care, skill, and diligence required of the medical and nursing home profession in general under similar conditions and like circumstances. The negligence of Defendants included, but was not limited to, the following:

a.    Failure to assess Mr. Smith's risk of elopement and wandering;

b.    Failure to assess Mr. Smith's heightened risk for falls;

c.    Failure to recognize Mr. Smith's significant need for meal assistance and provide that assistance to prevent malnutrition;

d.    Failure to implement, update, and follow Mr. Smith's care plans as needed based on the risks from his medical conditions, which caused him to suffer falls, allowed him to wander outside the facility, and caused him to suffer malnutrition and failure to thrive, which contributed to his death as well;

e.    Failure to develop a plan of care with adequate interventions, instead having a plan of care not tailored to the needs of Mr. Smith and having very few interventions;

f.    Failure to follow doctors' orders;

g.    Failure to prevent Mr. Smith's injuries from falls by failing to accurately assess his wandering risks and falls risk and implement interventions to protect him;

h.    Failure to recognize and prevent malnutrition and dehydration and take the appropriate steps to prevent significant weight loss, malnutrition, and dehydration, such as assistance with feeding and monitoring of food and fluid intake;

i.    Failure to provide care, as required by the standard existing generally for same or similar circumstances, through its care plan and interventions, to prevent Mr. Smith's falls, elopement, malnutrition, renal failure, failure to thrive, malnutrition, severe physical pain and suffering, and fractures, all which contributed to and/or caused his eventual death;

j.    Failure to provide adequate staffing to provide Mr. Smith the highest practical physical, mental, and psychological well-being;

k.    Failure to staff adequately to provide the necessary supervision and care to prevent Mr. Smith from wandering and falling and suffering severe, painful fractures which contributed to his death;

l.    Failure to adequately document and provide sufficient records related to the care and treatment of Mr. Smith in order to prevent injury to him; and

m.    Failure to ensure adequate care and treatment of Arthur Smith by failing to monitor him and diagnose and treat his malnutrition.

43.    Defendants also have vicarious liability for the negligent acts and omissions of all persons or entities under Defendants' control either direct or indirect, including its respective employees, agents, and consultants.

44.    As a direct and proximate result of the negligence of Defendants as described herein, Arthur Lewis Smith suffered injuries, physical and mental pain and suffering, disability, physical impairment, disfigurement, inconvenience, and death.

## COUNT II
## ORDINARY/SIMPLE NEGLIGENCE OF DEFENDANTS

45.    Plaintiff incorporates the above paragraphs as if fully set forth herein fully verbatim.

46.    This count asserts claims of ordinary negligence. The acts or omissions complained of herein may be assessed by the trier of fact on the basis of common, everyday experiences and the common knowledge of a lay person. The acts or omissions complained of here do not implicate questions of professional judgment or medical competence, nor do they involve matters of medical science or art requiring specialized knowledge, training, or skills not possessed by lay persons. Moreover, the acts or omissions complained of herein involve custodial neglect perpetrated by persons who were not medical professionals and/or the acts and omissions complained of herein resulted from the dangerous administrative policies, systems, directives, and/or practices engaged in by all Defendants which affected not only Mr. Smith, but an entire group of residents in the Facility.

47.    Defendants had a duty to exercise ordinary and reasonable care in providing services to Mr. Smith, including, but not limited to, the following: assisting with activities

necessary for daily living; providing appropriate plans of care; taking precautions to ensure the safety of all residents, including Mr. Smith, from falls and physical harm caused by falls; assessing and treating medical conditions, such as malnutrition; following state and federal regulations enacted for the safety of residents, like Mr. Smith; and observing, documenting, and reporting abnormal findings to nurses and physicians.

48. Defendants, by virtue of their own independent actions and while acting through staff employed by the facility, failed to exercise ordinary and reasonable care in provision of services for Mr. Smith. Defendants had a duty to exercise ordinary and reasonable care by:

a.  Providing adequate, sufficient, and appropriately trained staff at Defendants' Facility;

b.  Providing appropriate and necessary training of all staff at Defendants' Facility;

c.  Providing sufficient numbers of nurses, CNAs, and other staff Defendants' Facility;

d.  Provided a registered dietician to ensure the nutritional needs of Mr. Smith and other residents;

e.  Implementing protocols to protect Mr. Smith from neglect;

f.  Maintaining an adequate nursing staff to provide for Mr. Smith's needs;

g.  Providing properly trained, qualified and competent staff to care for Mr. Smith;

h.  Following physician's orders with respect to the care and treatment that Mr. Smith needed;

i.    Maintaining and implementing a comprehensive and accurate assessment of Mr. Smith's medical needs; and

j.    Adhering to state and federal laws and regulations implemented to protect residents like Mr. Smith.

49.    Defendants failed to exercise ordinary and reasonable care in performing the functions set forth in the previous paragraph.

### *Federal Regulations/OBRA*

50.    The Defendants' nursing home facility participates in the Medicare and Medicaid program. Accordingly, Defendants are subject to the rules and regulations concerning nursing homes participating in the Medicare and Medicaid programs adopted pursuant to the Omnibus Budget Reconciliation Act of 1987 (the "Act").

51.    The Act and accompanying regulations were enacted to protect the rights of nursing home residents in those homes that receive Medicare and Medicaid funding, and Arthur Lewis Smith was a member of the class the Act and accompanying regulations were intended to protect.

52.    Accordingly, Defendants violations of the following federal regulations are each evidence of ordinary negligence: 42 CFR § 483.10, 42 CFR § 483.12, 42 CFR § 483.15, 42 CFR § 483.20, 42 CFR § 483.21, 42 CFR § 483.24, 42 CFR § 483.25, 42 CFR § 483.35, 42 CFR § 483.40, 42 CFR § 483.45, 42 CFR § 483.50, 42 CFR § 483.60, and 42 CFR § 483.70.

53.    As a licensed and certified long-term care facility which receives funding under the Medicare and Medicaid programs, the Defendants' long-term care facility is subject to

the above described federal regulations for the provision of care, treatment and living assistance of residents of the facility.

54.    The Defendants violated the above regulations of the U.S. Department of Health and Human Services in the following acts and omissions, among others:

a.    Defendants failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental, and psychosocial well-being of Mr. Smith;

b.    Defendants failed to implement protocols to protect Mr. Smith from neglect;

c.    Defendants failed to operate and provide services to Mr. Smith in compliance with law and acceptable professional standards and principles that apply to professionals providing said services;

d.    Defendants failed to provide or arrange services for Mr. Smith that met professional standards of quality;

e.    Defendants failed to maintain an adequate nursing staff to provide for Mr. Smith's needs;

f.    Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Smith;

g.    Defendants failed to maintain clinical records related to the care and treatment of Mr. Smith in accordance with accepted professional standards and practices which are complete and accurate;

h.    Defendants failed consistently to make any effort to protect Mr. Smith from neglect;

i.    Defendants failed to properly train and supervise the nursing staff to provide the appropriate care, treatment, and services that Mr. Smith needed;

j.    Defendants failed to communicate medical conditions to Mr. Smith's doctor;

k.    Defendants failed to follow physician's orders with respect to the care and treatment that Mr. Smith needed;

l.    Defendants failed to maintain a comprehensive and accurate assessment of Mr. Smith's medical needs;

m.    Defendants failed to create and implement adequate plans of care for Mr. Smith's needs;

n.    Defendants failed to have sufficient staff who provide direct behavioral health services to Mr. Smith;

o.    Defendants failed to provide adequate pharmacy services and assessments of Mr. Smith's numerous psychotropic medications and drug interactions; and

p.    Defendants failed to provide adequate nutritional assessments and services to Mr. Smith.

55.    · Defendants' failure to comply with the above federal mandates led directly to Mr. Smith's serious injury, illness, terrible pain, suffering, anguish, grief, and death.

### *State Regulations*

56.    In addition to the facility's failure to adhere to federal regulations, the facility has also failed to adhere to the minimum requirements imposed on them by state law. Each violation of the following state regulations provides further evidence of negligence: Ga.

Comp. R. & Regs. 111-8-50-.07 and Ga. Comp. R. & Regs. 111-8-50-.02, among others.

57. As a direct and proximate result of the failure to provide ordinary and reasonable care, Arthur Lewis Smith suffered excruciating physical and mental pain, death and medical and funeral expenses.

58. Plaintiff is entitled to recover damages for the wrongful death of her father.

## COUNT III
### NEGLIGENT HIRING, RETENTION, TRAINING, SUPERVISION, AND FAILURE TO PROVIDE SUFFICIENT TRAINED STAFF

59. Plaintiff incorporates the above paragraphs as if fully set forth herein fully verbatim.

60. Defendants are subject to the statutes, rules, and regulations promulgated by the State of Georgia regarding the operation of a nursing home. Defendants must, at all times, comply with all said statutes, rules, and regulations.

61. Pursuant to the applicable statutes, rules and regulations, Defendants were required to hire, train, retain, supervise, and supply a sufficient number of qualified staff to provide the necessary care, treatment, and oversight for all residents at Fountain Blue Nursing and Rehab, including Arthur Smith.

62. Defendants failed to hire, train, retain, supervise, and supply a sufficient number of qualified staff to provide the necessary care, treatment and oversight for all residents including Arthur Smith, as so required.

63. Such failure to comply with the applicable statutes, rules, and regulations, as alleged in the preceding paragraphs, constitutes willful misconduct by Defendants.

64.    Such failure to comply as alleged in the preceding paragraphs, also demonstrates a conscious indifference to the consequences of such failure.

65.    As a proximate result of Defendants' failures as alleged in the preceding paragraphs, Arthur Smith was suffered physical and mental injuries and wrongful death.

66.    As a result of the Defendants' failure to provide sufficient staff at Defendants' facility and failure to properly train its staff, Plaintiff, is entitled to recover damages from the defendants for the wrongful death of Mr. Smith.

## COUNT IV
## IMPUTED LIABILITY

67.    Plaintiff incorporates the above paragraphs as if fully set forth herein fully verbatim.

68.    All of Arthur Lewis Smith's injuries and damages were the direct result of the acts and omissions of the agents, servants, and employees of the Defendant business entities conducted within the course and scope of each individual's employment with the Defendant business entity health care providers.

69.    The Defendant business entities are therefore vicariously liable for the individual employee's and agent's acts and omissions, and for each individual officer, director, employee, agent and servant's negligent acts and omissions, and the resultant injuries and damages of Arthur Lewis Smith by application of the doctrine of respondeat superior. The Plaintiff is therefore entitled to recover damages from the Defendants as set out below.

## COUNT V
## DIRECT LIABILITY

70.    Plaintiff restates and incorporates herein the allegations of the above paragraphs as if

fully set forth herein verbatim.

71.    Defendants are directly liable for the specific failure to adequately staff the nursing home as the facility's staffing and budget is controlled by the various parent companies. Defendants interfered directly in the manner Fountain Blue Nursing and Rehab undertook certain activities, specifically in the hiring of staff and monies for the staff budget. These parent companies ignored the subsidiary's separate existence, and the subsidiary's managing members and/or organizer and/or officers and directors who imposed the philosophy of the parent were also officers and directors of the parent corporations.

72.    Arthur Lewis Smith's injuries and damages were the direct result of the acts and omissions of the Defendant business entities.

73.    The Defendant business entities are therefore directly liable for their own negligent acts and omissions, and the resultant injuries and damages of Arthur Lewis Smith The Plaintiff is therefore entitled to recover damages from the Defendants as set out below.

**COUNT VI**
**ALTER EGO/AGENCY/JOINT ENTERPRISE**

74.    Plaintiff restates and incorporates herein the allegations of the above paragraphs as if fully set forth herein verbatim.

75.    At the time of the negligent acts and omissions and Mr. Smith's resultant injuries, damages, and death described above, the Defendants combined their property and labor in a joint undertaking for the provision of rehabilitation, long-term nursing home care, treatment, and services for a fee. Each had rights of mutual control over the

rehabilitation services, residence, care, treatment, and other services provided to Mr. Smith while he was a resident at the Defendants' facility. In addition to being directly liable for the wrongful acts as described in this complaint, all Defendants are responsible for the wrongful conduct under one or more of the following legal grounds:

a.  Alter Ego: at all times material to this action, the Defendants were acting as the alter ego of one another. Defendant Fountain Blue Nursing and Rehab was a mere conduit through which the other Defendants did business and the management and operations of this facility were so assimilated within the other Defendants that Fountain Blue was simply a name through which the other Defendants conducted their business. Moreover, Defendants represented and marketed to the public that Fountain Blue was part of one single economic enterprise, Macon Holdings Group, LLC. The other Defendants dominated and controlled the business affairs of the facility such that it was organized and operated as a tool of the other Defendants. These Defendants' shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs, and there is such unity of interest and ownership that the separate personalities of the corporation and owners no longer exist.

b.  Agency: at all times material to this action, the Defendants were acting as the agents of one another and ratified or authorized the acts or omissions of one or more of the other Defendants. Moreover, Defendants held themselves out, represented, and marketed to the public that Fountain Blue Nursing and Rehab was part of one single economic enterprise of the Macon Holdings Group of

corporations. Plaintiffs justifiably relied on the care or skill of the agent based upon the principals' representations.

c.    Joint enterprise: to the extent that Defendants are found to be separate legal entities, Defendants each remain liable for the acts and omissions of each other because the Defendants engaged in a joint venture and enterprise to act in concert in the operation, management, and maintenance of the Defendant facility, Fountain Blue. Defendants agreed to a common purpose of operating, managing, and maintaining the Defendant facility. Defendants had equal rights to control their venture as a whole, as well as to control the operation and management of the Defendant facility.

d.    All Defendants also acted jointly and in concert to cause one indivisible injury, and their negligence cannot be apportioned. Therefore, Defendants are joint tortfeasors making them jointly and severally liable.

76.    By virtue of the foregoing, each Defendant is liable to the Plaintiff herein for money damages as set out below by application of the joint enterprise theory of recovery.

## COUNT VII
## WRONGFUL DEATH

77.    As set out above, Mr. Smith sustained grievous injuries, suffered tremendously, and died as a direct result of the Defendants' acts and omissions in the provision of care, treatment, and services to him which constituted violations of federal and state law, professional negligence, and simple negligence.

78.     As a result of the Defendants' violations of federal and state law, professional

negligence, and simple negligence and Mr. Smith's resultant death as set out in detail

above, the Plaintiff is entitled to recover damages against the Defendant for Mr. Smith's

wrongful death in an amount equal to the full value of the life of the deceased.

WHEREFORE, Plaintiff prays for judgment against the Defendants as set forth

above and as follows:

A.     Damages representing the full value of the life of Arthur Lewis Smith;

B.     All attorneys' fees and costs incurred;

C.     Costs of this action;

D.     A trial by jury;

E.     Such other further, general, and equitable relief as this Court deems just.

This **10th** day **July** 20**20**.

THE HELMS LAW FIRM, P.C.

_s/Casey L. Gray_
J. Jeffrey Helms
Georgia Bar No.: 344510
Casey L. Gray
Georgia Bar No.: 167470
Attorneys for Plaintiff

10 N. College Street
P.O. Box 537
Homerville, Georgia 31634
T: (912) 487-5377
·F: (912) 487-5827
E: jeffhelms@helmslaw.com
E: caseygray@helmslaw.com

■ *Signatures Continued on Next Page*

MCARTHUR LAW FIRM P.C.


*s/Katherine L. McArthur*
Katherine L. McArthur
Georgia Bar No.: 480730
Attorney for Plaintiff

6055 Lakeside Commons Drive
Suite 400
Macon GA 31210
T: (478) 238-6600
F: (478) 238-6607
E: kmcarthur@mcarthurlawfirm.com

## AFFIDAVIT

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Barbara Barnette, RN, MSN, CLNC, who, after being duly sworn, deposes and states the following:

1.

The affiant is over 18 years of age, of sound mind and legal age, and fully competent to testify to the matters stated herein. The affiant makes this affidavit upon her own personal knowledge unless otherwise stated herein.

2.

Your affiant is a Registered Nurse licensed to practice nursing in the State of Ohio. Affiant is also a Certified Case Manager and Geriatric Resource Nurse. I have over 20 years of nursing experience in long-term care. As shown in my attached CV, I have been active in the practice of skilled nursing in a long-term care facility where I have provided frequent and regular care to patients immediately preceding Defendants' negligent treatment of Mr. Arthur Smith while a resident at Fountain Blue Nursing Home, with the negligent acts occurring on and before June 14, 2018.

3.

Specifically, since 2006, I have been the Assistant Director of Nursing at St. Augustine Manor, a skilled nursing facility. During this time, I have been responsible for assisting in the design, implementation, and monitoring of systems created to assist residents in achieving their highest level of functional ability, implementing and reviewing all policy and procedures in accordance with standards of care, supervising and providing direct care for the entire facility, educating nurses and nurses' assistants, supervising the

nursing staff to ensure adherence to the Nursing Standards of Practice, reviewing all critical incidents relating to resident care, and other services involving management of the facility and direct care to patients.

4.

Based on the foregoing, I have extensive education, training, and experience in all aspects of the provision of nursing care, treatment, and services to patients in a skilled nursing facility such as Fountain Blue for at least three out of the five years preceding the Defendants' negligent acts and omissions that caused injury to Mr. Smith.

5.

Pursuant to my education, training, and experience, your affiant is familiar with the standard of care, guidelines, and regulations of long-term care including those pertaining to a patient, like Mr. Smith, who was susceptible to wandering, elopement and falls.

6.

Also, pursuant to my education, training, and experience, I am familiar with the proper care of patients who had medical conditions similar to Mr. Smith and the treatment and care of patients after injurious falls such as Mr. Smith suffered, and the subsequent nutritional and hydration needs of the resident.

7.

As a result of my education, training, and experience outlined above, I am well qualified to testify as to the acceptable standards of care with respect to the below referenced aspects for nursing care that occurs at a nursing home like Fountain Blue.

8.

In preparing to execute this affidavit, I have reviewed certain records from Fountain

Blue Nursing Home including the patient's charts, nurse's notes, various medical assessments, and other records reflecting Mr. Smith's care and treatment while a resident at the Fountain Blue  facility in Macon. In addition, I have reviewed certain records from Navicent Medical Center, an acute care hospital where the Defendants sent Mr. Smith for additional care on June 14, 2018. Based on my review of those records your affiant has developed the following opinions, within a reasonable degree of certainty within the field of my expertise, that is more likely than not Fountain Blue, its agents and employees violated the standard of care that existed then under like or similar circumstances, in the care treatment, and services provided to Mr. Arthur Smith.

9.

The standard of care for all staff in the long-term care setting requires that the staff of the skilled nursing facility, in light of a resident who is susceptible to wandering, elopement  and falls, to assess properly the risk of wandering and elopement, which was not done in this case until June 13, 2018, nearly a week after Mr. Smith's fall and injury on June 7, 2018. Even then the assessment was not done accurately. The standard of care also requires that a proper care plan be devised and implemented to prevent residents like Mr. Smith from wandering, exiting the building, falling and suffering serious injuries.  Fountain Blue violated the standard of care existing  under same or similar conditions and circumstances in its failure to assess, care plan, and implement interventions to prevent Mr. Smith from wandering out of the building, falling and suffering serious injuries, as he did on June 7, 2018.  That fall caused Mr. Smith serious injuries.

10.

Further, the standard of care requires that all the staff, when caring for a resident like

Page 3 of 5

Mr. Smith, when he has been injured in a fall such as he suffered, and goes from being ambulatory to bed bound after his injury, to devise and implement a care plan and interventions for proper follow up care, specifically hydration and nutrition. In this case, after Mr. Smith's fall and injury on June 7, 2018 after he suffered a change in condition, the staff and facility failed to assess his needs, create a care plan and implement care to address these his nutritional and hydration needs. As a result, Mr. Smith's condition worsened, resulting in Defendants sending Mr. Smith to the Navicent Medical Center for further treatment. When Mr. Smith arrived at the acute care hospital, he suffered from volume depletion, acute renal failure and malnourishment. Fountain Blue's failure to provide proper care to Mr. Smith after his fall was a violation of the standard of care existing then under same or similar conditions and circumstances.

11.

Further, the standard of care in the long-term care setting requires that all staff, when a resident like Mr. Smith is injured, to assess and transfer the resident to a proper medical facility for a higher level of care, which Fountain Blue did not do in a timely basis for Mr. Smith after his injury. Fountain Blue's failure to do so was a violation of the standard of care existing then under same or similar conditions and circumstances.

12.

As a result of the above described failures to follow the acceptable standards of care, it is my opinion, within a reasonable degree of medical certainty, it is more likely than not that Fountain Blue and its agents and employees violated the applicable standard of care under same or similar circumstances resulting in Mr. Arthur Smith receiving sub-standard health care, causing him to suffer a needless fall and injury, and then after the injury, failed to provide proper care, hydration and nutrition, further causing injury to Mr. Smith, all

Page 4 of 5

eventually resulting in death of Mr. Smith on July 13, 2018.

13.

This Affidavit is given pursuant to the provisions of Official Code of Georgia Annotated § 9-11-9.1, which states that a single negligent act or omission be specified in order for a Complaint to be filed in the Courts of Georgia. It is not intended to encompass all of the opinions presently held by me. Rather, as discovery progresses and additional information becomes available, I reserve the right to modify or alter or form additional opinions.

This _____ day of July 2020.

Barbara Barnette, RN, MSN, CLNC

Sworn to and subscribed before me,

this _____ day of July 2020.

Notary Public
My commission expires: 6-28-22

PATRICIA L. FINEGAN
NOTARY PUBLIC STATE OF OHIO
MY COMMISSION EXPIRES JUNE 28, 2022

Page 5 of 5

136 Stonepointe Drive, Berea, Ohio, 44017=440-537-0183=barbaralynn_rn@yahoo.com

# Barbara Barnette RN, MSN, CLNC

2004-present                    Independent Certified Legal Nurse Consultant

### Independent Certified Legal Nurse Consultant

- Screen medical malpractice cases for merit, chronological review, provide written reports, depositions and trial testimony

- Plaintiff or Defendant Cases

- Define deviations from and adherences to the Standards of Care

- Identify factors that caused or contributed to alleged damages/injuries

- Excellent communication with legal team

2006- present                    St Augustine Manor                    Cleveland, Ohio

### Assistant Director of Nursing

- Participates in the design, implementation and monitoring systems designed to assist residents in achieving their highest level of functional ability

- Implements and reviews all policy and procedures in accordance with standards of care

- Assumes 24 hour responsibility for 248 bed facility – monitoring and evaluating all care provided

- Supervision of all nursing staff to ensure Nursing Standards of Practice are upheld

- Education of nurses and nursing assistants

- Reviews all critical incidents related to resident care (falls, wounds, weight loss, etc.)

- Provides direct resident care when assist is needed.

- Monitors and evaluates performance of nursing staff

- Implements QA and QAPI plans for the nursing department

- Actively involved with residents and families

- Facility make-up:  Skilled Nursing (IV fluids and solutions, TPN, Enteral Feeding, Wound Care, Blood Transfusions), Respiratory (tracheostomy and vent dependent residents), and Long-term Care

- Point Click Care Super User

| | St Augustine Manor | Cleveland, Ohio |
|---|---|---|

**2001-2006**
**Unit Manager**

- Assumes 24-hour responsibility for coordinating, monitoring and evaluating all interdisciplinary operational and administrative tasks of an 82- bed unit

- Member of the Fall Committee, Behavior Committee, Weight/Skin Committee and Restrain Reduction Committee

- Provided direct resident care

- Staff education

- Responsible for assuring a safe, clean and comfortable living and working environment

| 2000-2001 | Harborside Healthcare | Broadview Heights, Ohio |
|---|---|---|

**Unit Manager**

- Assumed full responsibility for a 58-bed unit

- Oversaw all care provided

- Coordinated admission process, assessed new residents and determined plan of care

## Education

| 2006 | The University of Akron - MSN | Akron, Ohio |
|---|---|---|
| 1999 | The Ohio State University – BSN | Columbus, Ohio |

- Certified Legal Nurse Consultant – 2004 – CLNC

- Certified Case Manager – CCM

- Geriatric Resource Nurse – GRN

- Clinical Preceptor – Case Western Reserve University – (2006) , Ursuline College of Nursing-BSN-MSN Program (2019), Kaplan University (2016), Ohio University BSN-MSN Program.

## References

References are available on request.